| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 11-43-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| VILLASPRING HEALTH CARE | ) | **MEMORANDUM OPINION** |
| CENTER, INC., et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of the defendants' joint motion to dismiss [Record No. 8]; Defendant Barry N. Bortz's separate motion to dismiss [Record No. 9]; Defendant Villaspring Health Care Center's (Villaspring) motion to strike [Record No. 13] and; Defendant Villaspring's motion for hearing on the motions to dismiss and motion strike [Record No. 11]. For the reasons that follow, the Court concludes that Defendant Bortz's individual motion to dismiss should be granted but the defendants' joint motion to dismiss should be denied. Further, the Court will strike a portion of the Complaint. The Court, however, will deny the request for a hearing on the motions.

## I.    Background

This case arises from allegations of neglect at a nursing home in Erlanger, Kentucky operated by Villaspring. Villaspring is a for-profit corporation that does business as "Villaspring of Erlanger Health Care and Rehabilitation." Carespring Health Care Management, Inc.

(Carespring) is the parent company of Villaspring.[1]  Defendant Bortz is the Chief Executive Officer (CEO) and majority shareholder of Villaspring.  This case began with the Kentucky Attorney General's criminal investigation of allegations of neglect at Villaspring.  Although the Commonwealth of Kentucky decided not to pursue criminal charges, it shared the results of the investigation with the United States Attorney for consideration of potential civil claims under the False Claims Act.  The United States filed suit against Villaspring, Carespring and Bortz on July 15, 2011.  [Record No. 1]

The Complaint alleges that the "Defendants have defrauded the United States and the Commonwealth of Kentucky by seeking, and receiving, substantial reimbursement from the Medicare and Kentucky Medicaid programs for care purportedly provided to these residents, despite knowing that such 'care' was either non-existent or so inadequate as to be worthless." [*Id.*, p. 1] Count I of the Complaint asserts a claim against Villaspring under the False Claims Act while Count II alleges common law fraud.  In Count III, the United States asserts a claim for unjust enrichment.  Concerning Count I, the United States proceeds according to a "worthless services" and an "implied certification" theory.  [*See* Record No. 23, pp. 4, 14]

The defendants responded by filing a motion to dismiss on September 6, 2011.  [Record No. 8]  Bortz filed an individual motion to dismiss the same day.  [Record No. 9]  The defendants also filed a motion to strike the Complaint on September 7, 2011.  [Record No. 13]

## II.    False Claims Act

---

1        Villaspring asserts that Carespring is not the parent company of Villaspring but does not identify the true relationship between the two corporations.  [Record No. 8-1, p. 8]

The False Claims Act (FCA), provides "restitution to the government of money taken from it by fraud." *United States v. Hess*, 317 U.S. 537, 551 (1943). Any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," is liable under the FCA. 31 U.S.C. § 3729(a)(1)(A)-(B). The elements of an FCA claim are: "(1) a person presents, or causes to be presented, a claim for payment or approval; (2) the claim is false or fraudulent; and (3) the person's acts are undertaken 'knowingly,' i.e., with actual knowledge of the information, or with deliberate ignorance or reckless disregard for the truth or falsity of the claim." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007). Additionally, the Sixth Circuit has imposed a materiality requirement. Therefore, a "false statement within a claim can only serve to make the entire claim itself fraudulent if that statement is material to the request or demand for money." *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Grp., Inc.*, 400 F.3d 428, 443 (6th Cir. 2005).

### III. Motions to Dismiss

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although

the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

### A.    Defendants' Joint Motion to Dismiss

In their joint motion to dismiss, the defendants assert that the United States lacks standing to bring this case and that it is estopped from arguing that Villaspring violated the FCA because the Centers for Medicare and Medicaid Services (CMS) allowed Villaspring to "submit claims and receive payment."[2] [Record No. 8-1, p. 26] Next, the defendants contend that the Complaint does not plead fraud with particularity because it fails to allege sufficient facts to comply with Rule 9(b) of the Federal Rules of Civil Procedure. [*Id.*, pp. 29-31] They also argue that the United States has failed to plead sufficient facts to show that the claims submitted were worthless or that there was knowledge on the part of the nursing home facility, [*Id.*, pp.13-25], and that the Complaint does not state a viable claim under the "implied certification theory." [Record No. 27, pp. 13-16] Finally, the defendants seek to dismiss the common law claims for fraud and unjust enrichment. [Record No. 8-1, pp. 31-32]

### 1.    Standing and Estoppel

The defendants contend that the United States does not have standing to bring this case. [Record No. 8-1, pp. 27-29] Additionally, they maintain that the United States is estopped from bringing this action because Villaspring was "entitled to rely on the communications it received

---

2       The Court has re-ordered Villaspring's arguments for the purposes of this opinion.

from CMS . . . that did not include either termination from participation in the Medicare and Medicaid programs or denial of payment." [*Id.*, p. 26] These arguments are without merit.

The United States has standing. The requirements for standing are: (1) the plaintiff must have suffered an "injury in fact," (2) there must be a "causal connection between the injury and the conduct complained of," and (3) it must be likely that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Accepting the allegations of the Complaint as true, the United States has suffered an injury in fact; namely, the "injury resulting from the alleged fraud." *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). In this case, the "conduct complained of," was the submission of false claims, not the deficiency of care as the defendants insist. [*See* Record No. 8-1, p. 29 (arguing that the "alleged wrongful act of providing bad care is separate from the later, distinct act of billing for the services")] Finally, a favorable decision would result in the government recovering the money that was obtained by fraud.

The defendants' estoppel argument can be broken down into three separate arguments, all of which are unconvincing. First, the defendants assert that the United States is precluded from bringing this claim because of its knowledge of the deficient care provided by Villaspring. According to this argument, because CMS was aware of "alleged deficiencies in the conditions of participation," but still allowed Villaspring to continue submitting claims and receiving payments, "the government had actual knowledge of the care provided by Villaspring and is estopped from now arguing now [sic] that Villaspring violated the False Claims Act." [Record No. 8-1, pp. 26-27] As the United States points out, however, the "statutory basis for an FCA

claim is the defendants' knowledge of the falsity of its claim, which is not automatically exonerated by any overlapping knowledge by government officials." *United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1156 (2d Cir. 1993); *see also A+ Homecare, Inc.*, 400 F.3d at 454 n.21 (rejecting the defendants' argument that the government's knowledge of a false accrual did not preclude his liability under the FCA for submitting a false claim).

Nonetheless, the defendants press forward with their second argument, which essentially contends that CMS's failure to bring charges or discontinue payments negates the scienter element of the United States' FCA claim. They maintain that the government "must prove intentional, knowing misconduct,[] and in a case such as this where the government did not give notice of false claims when reviewing and assessing penalties for the care provided, the provider . . . is entitled to reasonably rely on the government's representations." [Record No. 27, p. 7 (replying to Record No. 23, p. 18)] As an initial matter, the fact that CMS did not "declare the services to be worthless" does not constitute a representation from the government that the claims submitted by Villaspring were not false. [*Id.*] Additionally, however, this argument conflates the element of scienter under the FCA with the issue of estoppel, resulting in an untenable reading of the FCA. The rule espoused by the defendants would essentially eviscerate the FCA, most importantly because it ignores the fact that the term "knowingly" in the statute also encompasses intentional acts. This interpretation would have the effect of shielding defendants who engaged in intentional and purposeful fraud on the United States just because

the government did not inform them that their claims were false before bringing an action. The Court declines to adopt a rule that would have such an anomalous result.

Finally, the defendants aver that it would "violate fundamental due process for the federal government, represented by CMS, to authorize the submission of claims and pay them and the same federal government, represented by the Department of Justice, to allege that the submissions of those same claims violates the False Claims Act." [*Id.*, p. 27] This argument is not persuasive. *Every* case brought by the United States under the FCA seeks money that was paid by some federal governmental agency. The government has no reason to seek damages under the FCA for claims that it did not pay. If the United States is estopped from alleging that submissions of claims for payment — even fraudulent ones — that were paid, on the basis that the wrongdoer had relied on the payment to believe that "it was permitted to continue to submit claims for payment," then the entire purpose and history of the FCA would be undermined. [*See* Record No. 8-1, p.27]

### 2. Rule 9(b) of the Federal Rules of Civil Procedure

The defendants also argue that the Complaint fails to allege sufficient facts to plead fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. A complaint is sufficient for purposes of Rule 9(b) if it alleges "(1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendants' fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks omitted). Regarding fraudulent intent, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Therefore, the intent

requirement is satisfied by the allegation that "Defendants knowingly directed and approved of the billings by Villaspring to the Medicare and Kentucky Medicaid programs . . . despite knowing that the services provided to Villaspring patients were so deficient or inadequate as to be worthless." [Record No. 1, ¶ 9]

In the specific context of False Claims Act cases, the plaintiff must "detail[] the residents for whom services are claimed; the dates the allegedly worthless services were rendered, the facilities where the residents reside, and which facilities submitted which claims to Medicare and Medicaid." *United States v. Cathedral Rock Corp.*, No. 4:03CV1090 HEA, 2007 WL 4270784, at *6 (E.D. Mo. Nov. 30, 2007). The first three conditions are met here. The United States has included details about five patients in its Complaint. [Record No. 1, pp. 16-30] Regarding the dates, "[w]hen an underlying fraudulent activity is alleged to have occurred systematically and continuously over a period of time it is sufficient to allege a general time frame of the fraud in question." *United States v. NHC Healthcare Corp.*, 115 F. Supp. 2d 1149, 1151 (W.D. Mo. 2000). Here, the United States has alleged that Villaspring engaged in fraudulent behavior from July 1, 2005, until December 31, 2008. [Record No. 1, ¶ 8] This is sufficient for the purposes of the pleading standard. Additionally, the Complaint clearly alleges that Villaspring is the facility in question.

Additionally, the United States has sufficiently alleged which facilities submitted which claims to Medicare and Medicaid. *See Cathedral Rock Corp.*, 2007 WL 4270784, at *6. The Sixth Circuit has established a general rule that "an allegation of an actual false claim is a necessary element of a FCA violation." *Chesbrough*, 655 F.3d at 471 (citing *Bledsoe*, 501 F.3d

-8-

493).  Thus, for a plaintiff to properly plead a claim under the FCA, "it is insufficient to simply plead the [fraudulent] scheme; [it] must also identify a representative false claim that was actually submitted to the government."  *Id.* at 470.  A complaint is deficient if it fails to "identify with particularity any billings . . . that were actually submitted to the government, or any dates on which bills were submitted."  *Id.*

The Complaint is not deficient under the facts presented.  It contains specific allegations regarding five representative patients, including the dates on which claims for payment were submitted and the amounts that Medicare and Medicaid paid for each of these patients.[3]  This particularity belies Villaspring's contention that the United States is engaging in a "fishing expedition."  [Record No. 8-1, p. 30]  Therefore, the Complaint is pleaded with sufficient particularity for purposes of Rule 9(b) of the Federal Rules of Civil Procedure.

### 3.    Worthless Services Claim

The defendants object to the United States' "worthless services" theory of recovery.  A worthless services claim "asserts that the knowing request of federal reimbursement for a

---

3       For example, the Complaint alleges:

> For the care purportedly provided to Resident #1 from July 2, 2004 to February 22, 2005, Defendants submitted electronic claims for payment to Kentucky Medicaid, and Kentucky Medicaid paid claims totaling $21,249,57.

> For the care purportedly provided to Resident #1 from July 2, 2004 to February 22, 2005, Defendants submitted electronic claims for payment to Medicare, and Medicare paid claims totaling $9,902.04.

[Record No. 1, ¶¶ 78-79]  The Complaint contains similarly detailed allegations regarding Patients #2 through #5.  [*See id.*, ¶¶ 93, 106, 118-19, 132-33]  Moreover, in one instance, the United States documents a single, identifiable claim that was submitted to Medicare on January 5, 2005, for a catheter insertion tray with bag.  [*Id.* ¶ 75 n.2]

procedure with no medical value violates the Act." *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 702 (2d Cir. 2001). "It is effectively derivative of an allegation that a claim is factually false because it seeks reimbursement for a service not provided." *Id.* at 703. The defendants argue that a worthless services claim is inapplicable in the context of a nursing home, because the services to residents are billed on a *per diem* basis. As a result, they maintain that the United States has failed to state a claim because it did not "assert that Villaspring failed to provide the room, board and at least some of the care needed by these residents." [Record No. 8-1, p. 16] In other words, the defendants contend that for a worthless services claim to succeed past a motion to dismiss, the complaint must allege that the nursing home residents were given no services at all.

Although it is true that a worthless services claim is not easy to establish in the context of nursing home services, the defendants' articulation of the situation is an exaggeration of what is required. It is not necessary to show that the services were completely lacking; rather, it is also sufficient to show that "patients were not provided the quality of care" which meets the statutory standard. *United States v. NHC Healthcare Corp.*, 115 F. Supp. 2d 1149, 1153 (W.D. Mo. 2000) (*NHC Healthcare II*). A *per diem* billing arrangement presupposes that a nursing facility will agree to provide "the quality of care which promotes the maintenance and the enhancement of the quality of life." 42 U.S.C. § 1396r(b)(1)(A). However,

> [a]t some very blurry point, a provider of care can cease to maintain this standard by failing to perform the minimum necessary care activities required to promote the patient's quality of life. When the provider reaches that point, and still presents claims for reimbursement to Medicare, the provider has simply committed fraud against the United States.

*United States v. NHC Health Care Corp.*, 163 F. Supp. 2d 1051, 1055-56 (W.D. Mo. 2001) (*NHC Healthcare II*).

Whether Villaspring's actions fell within the "admittedly grey area" beyond this "blurry point" is necessarily a fact-intensive inquiry and, therefore, not a proper question for the Court to answer on a motion to dismiss. *Id.* The United States has pleaded sufficient facts to state a plausible claim that the line was crossed, and that Villaspring did not provide the "minimum level of care necessary under its obligation to the United States." *See NHC Healthcare Corp. I*, 115 F. Supp. 2d at 1153.

### 4.    Implied Certification Claim

The defendants similarly object to the United States "implied certification" theory of recovery. Liability under the FCA can be found when a defendant "violates its continuing duty to comply with the regulations on which payment is conditioned." *United States ex rel. Augustine v. Century Health Servs.*, 289 F.3d 409, 415 (6th Cir. 2002). This theory of FCA liability is often referred to as an implied certification claim. An implied certification claim is "based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." *Mikes*, 274 F.3d at 699.

"[A] false certification of compliance, without more, does not give rise to a false claim for payment unless payment is conditioned on compliance." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 269 (5th Cir. 2010). The Medicare and Medicaid regulations make a distinction between Conditions of Participation and Conditions of Payment.

For a skilled nursing facility (SNF), Conditions of Participation are the "requirements that an institution must meet in order to qualify to participate as a SNF in the Medicare program, and as a nursing facility in the Medicaid program."  42 C.F.R. § 483.1 (2011).  In other words, "Conditions of Participation are quality of care standards directed towards an entity's continued ability to participate in the Medicare program rather than a prerequisite to a particular payment." *United States ex rel. Landers v. Baptist Mem'l Health Care Corp.*, 525 F. Supp. 2d 972, 978 (W.D. Tenn. 2007).  Therefore, violations of a Condition of Participation do not necessarily give rise to an implied certification claim.

In addition, several federal courts of appeals have held that "implied certification is appropriately applied only when the underlying statute or regulation upon which the plaintiff relies *expressly* states the provider must comply in order to be paid."  *Mikes*, 274 F.3d at 700 (emphasis in original).  The Second Circuit was the first to adopt this rule in *United States ex rel. Mikes v. Straus*, reasoning that to permit FCA plaintiffs "to assert that defendants' quality of care failed to meet medical standards would promote federalization of medical malpractice."  *Id.* Instead, "a limited application of implied certification in the health care field reconciles, on the one hand, the need to enforce the Medicare statute with, on the other hand, the active role actors outside the federal government play in assuring that appropriate standards of medical care are met."  *Id.* at 699-700 ("False Claims Act was not designed for use as a blunt instrument to enforce compliance with all medical regulations – but rather only those regulations that are a precondition to payment.").  "Under this approach, when an underlying regulation expressly prohibits payment upon non-compliance with its terms, the submission of a claim implicitly

certifies compliance with that regulation." *United States ex rel. Quinn v. Omnicare, Inc.*, 382 F.3d 432, 441-42 (3d Cir. 2004). The Third, Ninth, and Tenth Circuits have adopted similar rules. *See United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 309 (3d Cir. 2011); *Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (finding that a certain Medicare regulation "may serve as the basis for an implied false certification because it provides a condition of payment, not participation"); *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1218 (10th Cir. 2008) ("[T]he FCA cannot support such expansive liability in the absence of an underlying statute or regulation that conditions payment on compliance with the certification.").

Other circuits have interpreted the implied certification theory more broadly. They have "found that a claim may be false or fraudulent due to an implied representation of compliance with a precondition of payment that is not expressly stated in a statute or regulation." *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 387 (1st Cir. 2011); *see also United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257 (D.C. Cir. 2010) (*SAIC*). These circuits have reasoned that a rule limiting preconditions of payment only to express statements in statutes and regulations is "not set forth in the text of the FCA." *Hutcheson*, 647 F.3d at 388. Moreover, such a rule has the potential to limit FCA liability "in situations that Congress intended to fall within the Act's scope." *SAIC*, 626 F.3d at 1268. The D.C. Circuit outlined just such a possible anomalous result in *United States v. Sci. Applications Int'l Corp.*

> For example, under [this] theory, no FCA liability would attach where a government contractor (1) knows that it violated a contractual requirement, (2) recognizes that compliance with that requirement is material to the government's decision to pay (even though the contract nowhere formally identifies the

condition as a payment prerequisite), and (3) submits claims for payment that omit any mention of the requirement while knowing that were the violation disclosed, no payment would be forthcoming. Under this scenario, the contractor would escape FCA liability because the absence of an express condition precedent to payment would prevent the fact-finder from judging the company's claim to be false despite the contractor's knowledge that its ability to receive payments from the government depended on withholding information about its non-compliance with a key contractual provision. We decline to create such a counterintuitive gap in the FCA by imposing a legal requirement found nowhere in the statute's language.

*Id.* at 1268-69. Under this interpretation, a defendant can be found to violate a pre-condition of payment found in its contract with the government, rather than one found in a statute or regulation. *Hutcheson*, 647 F.3d at 387.

The Sixth Circuit has not addressed this issue. However, at this point in the proceedings, this Court is persuaded that the United States has adequately pleaded an implied certification claim because it has alleged that Villaspring violated its provider agreement. When Villaspring enrolled in Medicare it was required to submit a form (HCFA-855) in which it agreed to a certification statement. [Record No. 1-5] The language of the Certification Statement signed by Bortz on behalf of Villaspring, provides: "I understand that payment of a claim by Medicare or other federal health care programs is conditioned on the claim and the underlying transaction complying with such laws, regulations and program instructions . . . and on a provider/supplier being in compliance with any applicable conditions of participation in any federal health care program." [*Id.*, p. 19] Based on this contract language, it is reasonable for the government to assert that a violation of a Medicare statute or regulation could give rise to liability under an implied certification theory.

In allowing this claim to proceed, the Court notes that there are other ways to limit the circumstances under which a court might find that a medical provider implicitly certified compliance with a particular rule. The materiality requirement adopted by the Sixth Circuit achieves the same basic result as the rule in *Mikes*, without unnecessarily cabining the scope of the FCA. *See SAIC*, 626 F.3d at 1270 (finding that concerns about an excessively broad interpretation of the FCA "can be effectively addressed through strict enforcement of the Act's materiality and scienter requirements"). Only a material claim or statement (*i.e.,* one which has a "natural tendency" to affect the government's decision to pay a provider) can trigger liability under the FCA. *See A+ Homecare, Inc.*, 400 F.3d at 442-46. Therefore, perfect compliance is not required. Rather, the United States must prove not only that Villaspring violated Medicare or Medicaid regulations but also that those violations, had they been disclosed, would have been material to CMS's decision to pay. In other words, it must show that Villaspring would have been ineligible to receive payment during the period of its non-compliance. Because this determination is fact-dependent, dismissal is not appropriate at this stage of the proceedings.

### 5.    Common Law Claims

The defendants have also moved to dismiss Counts II and III of the Complaint which assert claims for fraud and unjust enrichment. For the reasons as outlined above, dismissal would be improper for the FCA claims. Therefore, the Court will deny the motion to dismiss regarding Count II.

The Court will also deny the motion to dismiss Count III. The elements of a federal common law claim of unjust enrichment are: "'(1) the Government had a reasonable expectation

of payment; (2) [the defendant] should reasonably have expected to pay; or (3) society's reasonable expectations of person and property would be defeated by nonpayment.'" *United States ex rel. Williams v. Renal Care Grp.*, No. 3:09-00738, 2010 WL 1062634, at *11 (M.D. Tenn. Mar. 22, 2010) (quoting *United States v. Rogan*, 459 F. Supp. 2d 692, 728 (N.D. Ill. 2006)) (alterations in original).  The defendants maintain that unjust enrichment does not apply because there was an "explicit contract which has been performed."  [Record No. 8-1, p. 32 (citation omitted)]  This argument is misplaced, however, because "Medicare Provider Agreements create statutory, not contractual rights." *Williams*, 2010 WL 1062634, at *11 (citing *United States ex rel. Roberts v. Aging Care Home Health, Inc.*, 474 F. Supp. 2d 810, 821 (E.D. La. 2007)).

The United States' Complaint has alleged that Villaspring sought and received reimbursement for services that were "either non-existent or so inadequate as to be worthless." [Record No. 1, p. 1]  It has alleged numerous facts that, if true, make this assertion plausible. Therefore, the United States has established "sufficient factual matter, accepted as true, to 'state a claim'" that Villaspring has obtained payments for which it did not provide services, and were therefore unjustly enriched at the government's expense.  *See Iqbal*, 129 S. Ct. at 1949.

### B.    Barry Bortz's Motion to Dismiss

Defendant Bortz has filed a separate motion to dismiss, arguing that he is not a proper defendant in this case.  He maintains that the United States "has not alleged facts to support a finding that Mr. Bortz himself violated the False Claims Act." [Record No. 9-1, p. 5] The Court agrees.

The Complaint has not alleged any facts to support allegations that Bortz caused the claims in question to be submitted as required by the FCA. *See* 31 U.S.C. § 3729(a)(1)(A). In fact, other than identifying him as a party and asserting that he signed the Medicare and Medicaid provider agreement and cost reports on behalf fo Villaspring, the Complaint barely mentions Bortz by name. [Record No. 1, ¶¶ 7-8, 26, 39, 47] Even where an allegation as to Bortz can be assumed from a reference to the defendants as a group, the Complaint states only "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. For instance, the United States asserts that "Defendants failed to provide adequate care to the elderly and vulnerable residents of Villaspring" and that "claims for payment for the residents . . . were submitted, or caused to be submitted, by the Defendants." [Record No. 1, ¶¶ 61, 65] This is simply not enough to state a claim under *Iqbal* and *Twombly*. Therefore, the Complaint does not state a plausible claim for relief because it does not plead sufficient "factual content that allows the court to draw the reasonable inference" that Bortz actually caused any of the claims at issue to be submitted to Medicare or Medicaid. *Iqbal*, 129 S. Ct. at 1949.

The Complaint does not allege that he personally violated the FCA. However, Bortz could potentially be kept as a defendant if he could be found to be vicariously liable for Villaspring's alleged fraudulent behavior.[4] However, the United States does not seek to proceed

---

4       Bortz asserts that the fact that he is a shareholder and officer of Villaspring is "not a basis for imposing personal liability on him, because under the False Claims Act persons may be held accountable for their own wrongful conduct, but not for the conduct of others." [Record No. 9-1, p. 2 (citing *United States v. Bornstein*, 423 U.S. 303, 312 (1976))] He is not completely correct in asserting that there is no vicarious liability under the FCA, because courts have found employers vicariously liable under the FCA for acts of employees when the employees acted within the scope of their employment and for the purposes of benefitting the employer. *See Grand Union Co. v. United States*, 696 F.2d 888, 890-91 (11th Cir. 1983).

against Bortz on this theory. The government has stated that it is not alleging that Bortz is vicariously liable or that the corporate veil should be pierced. [Record No. 23, p. 24] Because the United States has not sufficiently pleaded its claims against Bortz, he will be dismissed as a defendant to this action.

Although the Court will grant Bortz's motion for the reasons outlined above, it notes that dismissal would also be appropriate under Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that, "when the complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for individual acts of fraud." *Infocision Mgmt. Corp. v. Found. for Moral Law, Inc.*, No. 5:08-cv-1342, 2009 WL 650282, at *8 (N.D. Ohio Jan 14, 2009) (quoting *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994)). Here the Complaint does not allege any "actual false claim" that Bortz submitted or caused to be submitted. *Chesbrough*, 655 F.3d at 471.

The government maintains that it has made "factual allegations that tie Bortz to the submission of specific false claims." [Record No. 23, p. 28] However, nowhere in the Complaint does the United States allege that Bortz himself had any role in the actual submission of claims. Asserting that he exercised "direct and indirect control of Villaspring's nursing facility" is not enough for the Court to connect the dots between his ownership and the specific conduct involved in the submission of a claim for reimbursement. The Complaint lacks sufficient "factual content that allows the court to draw the reasonable inference that the

---

However, it is true that vicarious liability does not generally apply to owners of companies held liable under the FCA.

defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Therefore, dismissal is also warranted under Rule 9(b).[5]

## IV.    The Motion to Strike

The defendants have also moved to strike the Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  This rule provides that the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Rule 12(f), Fed. R. Civ. P.  The United States correctly points out that this motion is untimely, because it was filed one day after Villaspring responded to the pleading, and the motion must be made before responding to the pleading in question.  However, because the Rule authorizes a court to act on its own, the Court may still consider the merits of Villaspring's motion.  *See Hughes v. Lavender*, No. 2:10-cv-674, 2011 WL 2945843, at *2 (S.D. Ohio July 20, 2011).

Motions to strike are generally disfavored and should be used sparingly.  Notwithstanding this general rule, the Court has "considerable discretion in deciding whether to strike portions of pleadings under 12(f)."  *Thompson v. Hartford Life & Accident Ins. Co.*, 270 F.R.D. 277, 279 (W.D. Ky. 2010).  To be stricken, a pleading, or part of a pleading, must "have no possible relation or logical connection to the subject matter of the controversy and cause some form of significant prejudice" to the opposing party.  *Mosier v. Kentucky*, No. 08-184-KSF, 2008 WL 4191510, at *1 (E.D. Ky. Sept. 11, 2008).  Prejudice can result from impertinent or scandalous matter contained in the pleading.  Thus, a court may decide to "strike portions of a pleading for

---

5    In its response to Bortz's motion to dismiss, the United States seeks leave to amend the complaint if the claims against Bortz are dismissed as lacking particularity Rule 9(b).  [Record No. 23, p.29]  Because the primary basis for dismissing Bortz as a defendant is the United States' failure to state a claim under Rule 12(b)(6), and Rule 9(b) merely provides an alternative reason for the dismissal, this request will be denied.

being impertinent or scandalous only where the language is extreme or offensive." *Thompson*, 270 F.R.D. at 279.

Under this standard, the Court will strike Exhibits 5, 6, 7 and 8 of the Complaint, which are photographs of wounds without any accompanying medical explanation. Based on the issues presented for resolution, the pictures serve no purpose in supporting the allegations in the Complaint. Instead, these photographs have the potential to cause undue prejudice to Villaspring if presented to a jury. *See Nextel of New York, Inc. v. City of Mount Vernon*, 361 F. Supp. 2d 336, 340 (S.D.N.Y. 2005). As a result, they are not only scandalous but also irrelevant, and will be stricken from the Complaint.

The Court declines to strike the entire Complaint or paragraphs 62 through 146, as requested by Villaspring. [Record No. 13-1, p. 13] These allegations do not rise to the level of "extreme or offensive" language. *See Thompson*, 277 F.R.D. at 279.

## V. Conclusion

Based on the foregoing analysis and discussion, it is hereby

 **ORDERED** as follows:

(1)     Defendant Villaspring Health Care Center, Inc.'s motion to dismiss [Record No. 8] is **DENIED**.

(2)     Defendant Barry N. Bortz's motion to dismiss [Record No. 9] is **GRANTED**. Barry N. Bortz is dismissed as a party to this action. All claims asserted against this defendant are **DISMISSED**, without prejudice.

(3)     Defendant Villaspring Health Care Center, Inc.'s motion for a hearing [Record No. 11] is **DENIED** as moot.

(4)     Defendant Villaspring Health Care Center, Inc.'s motion to strike [Record No. 13] is **GRANTED**, in part.  Exhibits 5, 6, 7 and 8 to the Complaint shall be **STRICKEN**.

This 19th day of December, 2011.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge